295 P.3d 435

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Plaintiff/Appellee,**

v.

**Kristie WHITE and John Doe White, Defendants/Appellants.**

**No. 1 CA–CV 12–0063.**

Court of Appeals of Arizona, Division 1, Department E.

Jan. 3, 2013.

Judge of the Court of Appeals, Division One, was designated to sit in this matter.

DeCiancio Robbins PLC By Joel DeCiancio, Christopher Robbins, Tempe, Attorneys for Plaintiff/Appellee.

The Rycraft Law Firm PLLC By Dale B. Rycraft, Mesa, and Jolley Urga Wirth Woodbury & Standish By Martin A. Little, Pro Hac Vice, Las Vegas, NV, Attorneys for Defendant/Appellant Kristie White.

## OPINION

JOHNSEN, Judge.

¶ 1 Kristie White appeals from the superior court's judgment denying her request for underinsured motorist benefits for the wrongful death of her son under an insurance policy the boy's grandparents purchased from State Farm Mutual Automobile Insurance Company. State Farm concedes its policy otherwise would cover White's wrongful-death claim, but argues coverage is barred by Arizona Revised Statutes ("A.R.S.") section 20–259.03 (West 2012).[1] We hold § 20–259.03 does not prohibit an insurer from providing underinsured motorist coverage on the facts presented. Because State Farm offers no other defense to coverage, we reverse the judgment and remand for entry of judgment in favor of White.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 The facts are undisputed. White's teenage son was a passenger in a rental car driven by his maternal grandmother, Carol,

---

**1.** Absent material revisions after the relevant date, we cite a statute's current version.

when the two were involved in a head-on collision caused by an underinsured driver. White's son died as a result of injuries sustained in the collision.

¶ 3 Carol and her husband John owned a State Farm policy that provided underinsured motorist ("UIM") coverage with limits of $250,000 per person/$500,000 per accident. The UIM insuring clause recited that State Farm would "pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle." A list of definitions followed immediately thereafter, and defined "insured" as follows:

> Insured—means the person or persons covered by uninsured motor vehicle or underinsured motor vehicle coverages.
>
> This is:
>
> 1. the first person named in the declarations;
> 2. his or her spouse;
> 3. their relatives; and
> 4. any other person while occupying:
>     a. your car [or] a temporary substitute car . . .
> 5. any person entitled to recover damages because of bodily injury to an insured under 1 through 4 above.

The policy elsewhere defined "relative" as "a person related to you or your spouse by blood, marriage or adoption who resides primarily with you."

¶ 4 State Farm filed a complaint for declaratory relief against White and several other parties, asserting no one other than White's son was entitled to UIM coverage. There is no dispute that White's son was an "insured" for purposes of UIM coverage. Because White was not "resid[ing] primarily" with Carol and John, there likewise was no dispute that she was not a "relative" under provision three of the policy's definition.

¶ 5 The superior court entered summary judgment in favor of State Farm, holding White was not entitled to UIM benefits under the policy. We have jurisdiction of White's timely appeal pursuant to A.R.S. § 12–2101(A) (West 2012).

## DISCUSSION

### A. Legal Principles

¶ 6 We review a grant of summary judgment *de novo*, viewing the evidence and all reasonable inferences therefrom in the light most favorable to the party opposing it. *Ochser v. Funk*, 228 Ariz. 365, 369, ¶ 11, 266 P.3d 1061, 1065 (2011). Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(c).

¶ 7 Statutory interpretation is a question of law we review *de novo*. *TDB Tucson Group, L.L.C. v. City of Tucson*, 228 Ariz. 120, 123, ¶ 6, 263 P.3d 669, 672 (App.2011). When interpreting statutes, our primary goal is to give effect to legislative intent. *Bither v. Country Mut. Ins. Co.*, 226 Ariz. 198, 200, ¶ 8, 245 P.3d 883, 885 (App.2010). We look at the plain meaning of the statutory language, affording words their "usual and commonly understood meaning unless the legislature clearly intended a different meaning." *State v. Bhatt*, 227 Ariz. 523, 526, ¶ 17, 260 P.3d 1088, 1091 (App.2011) (quotation omitted).

### B. The State Farm Policy Grants UIM Benefits to a Claimant Entitled to Damages for the Wrongful Death of an Insured.

¶ 8 State Farm's answering brief concedes that, but for A.R.S. § 20–259.03, White "would have been entitled to recover UIM benefits under her parents' policy" for the wrongful death of her son. Indeed, within the plain meaning of the State Farm policy, White is a "*person* entitled to recover damages because of *bodily injury* to an *insured*." That is, White's wrongful-death claim is a claim for damages that arises "because of" the death of her son. The policy defines "bodily injury" to include "death which results from" bodily injury and, as noted, it is not disputed that White's son is an "insured" for purposes of UIM coverage.[2]

---

**2.** Wrongful-death claims typically fall within UIM coverage of claims for damages "because of bodily injury" to another. *See, e.g., Amica Mut. Ins. Co. v. Moak*, 55 F.3d 1093, 1096 (5th Cir.

### C. A.R.S. § 20–259.03 Does Not Require State Farm to Deny White's Claim for UIM Benefits.

¶ 9 State Farm argues, however, that A.R.S. § 20–259.03 bars it from paying benefits to White under the circumstances present here. In relevant part, the statute states:

Notwithstanding any other law, in the case of the death of an insured who is covered under the uninsured and underinsured motorist coverages of a motor vehicle liability policy, recovery for wrongful death is limited to any party who is qualified to bring a wrongful death action pursuant to § 12–612 and who is also a surviving insured under the same coverages of the policy.

A.R.S. § 20–259.03. The referenced statute, A.R.S. § 12–612 (West 2012), authorizes wrongful-death actions, *inter alia,* "brought by and in the name of the surviving husband or wife, ... parent or guardian."

¶ 10 Section 20–259.03 applies here because White's claim arises from the death of her son, an insured under the UIM provisions of the State Farm policy. The question under the statute, therefore, is whether White is a "party who is qualified to bring a wrongful-death action pursuant to § 12–612 and who is also a surviving insured under the same coverages of the policy." [3]

¶ 11 State Farm argues that although White is entitled to bring a wrongful-death claim for her son's death pursuant to A.R.S. § 12–612, she cannot recover UIM benefits because she is not a "surviving insured under the same coverages of the policy," within the meaning of A.R.S. § 20–259.03. State Farm

contends the latter statute allows an insurer to pay wrongful-death UIM benefits only to named insureds and their spouses. Because White was neither a named insured nor a surviving spouse of a named insured under her parents' policy, State Farm argues § 20–259.03 does not allow it to pay her UIM benefits.

¶ 12 For support, State Farm points to certain legislative history materials concerning § 20–259.03, which State Farm argues show that the purpose of the statute was to allow insurers to pay wrongful-death benefits only to named insureds.[4] But under applicable principles of statutory construction, we do not look to legislative history to divine the meaning of a statute whose language is clear.

¶ 13 "When analyzing statutes, we apply 'fundamental principles of statutory construction, the cornerstone of which is the rule that the best and most reliable index of a statute's meaning is its language and, when the language is clear and unequivocal, it is determinative of the statute's construction.'" *Deer Valley Unified Sch. Dist. No. 97 v. Houser,* 214 Ariz. 293, 296, ¶ 8, 152 P.3d 490, 493 (2007) (quoting *Janson ex rel. Janson v. Christensen,* 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991)). "When statutory language admits of only one interpretation, we go no further." *Backus v. State,* 220 Ariz. 101, 104, ¶ 11, 203 P.3d 499, 502 (2009).

¶ 14 Contrary to State Farm's assertion, § 20–259.03 does not bar an insurer from paying wrongful-death UIM benefits to

---

1995); *Wieprzkowski v. State Farm Mut. Auto Ins. Co.,* 976 P.2d 891, 893 (Colo.App.1999) (damages incurred "because of" bodily injury to an insured "include[ ] claims for damages such as those resulting from payment by a parent of a child's medical expenses, wrongful death, and loss of consortium").

3. Although White's parents were named insureds under the State Farm policy, A.R.S. § 12–612 does not allow a grandparent who is not a guardian to bring a wrongful-death claim. *See Edonna v. Heckman,* 227 Ariz. 108, 110, ¶ 11, 253 P.3d 627, 629 (App.2011).

4. State Farm cites legislative materials tracing the enactment of § 20–259.03 in 1998. These materials support the insurer's argument that the

origin of the statute may have been a complaint by a constituent whose daughter perished in an accident involving an uninsured motorist. The constituent complained that she had to share her insurance policy's wrongful-death proceeds with her ex-husband even though he was not involved in the girl's life at the time of the accident. An early version of the legislation would have barred payment of wrongful-death benefits to any non-custodial parent who was not a "named insured" under the policy. The legislative materials contain no explanation for legislators' subsequent decision to discard that prohibition in favor of the statute's current language.

anyone other than a named insured. The statute instead allows an insurer to pay wrongful-death UIM benefits to any eligible claimant that the insurer has chosen to define as "a surviving insured under the same coverage [ ] of the policy." If the legislature intended to bar payment of wrongful-death UIM benefits to anyone but named insureds (and perhaps their surviving spouses), as State Farm contends, it would have said so. We "will not read into a statute something which is not within the manifest intent of the legislature as indicated by the statute itself." *City of Tempe v. Fleming,* 168 Ariz. 454, 457, 815 P.2d 1, 4 (App.1991).

¶ 15 State Farm further argues that White's son was staying with his grandparents because White temporarily had relinquished custody of him, and public policy requires us to construe § 20–259.03 to bar payment of wrongful-death proceeds to a non-custodial parent who is unfit or is not involved in the child's life. But a parent's entitlement to damages for the wrongful death of a child is governed in the first instance by A.R.S. § 12–612. *See generally Walsh v. Advanced Cardiac Specialists Chartered,* 229 Ariz. 193, 196, ¶¶ 8, 11, 273 P.3d 645, 648 (2012) (wrongful-death damages "may include ... the loss of companionship, comfort, and guidance caused by the death; and the survivor's emotional suffering"; "jury has an extraordinarily wide discretion in determining the amount of compensation for a wrongful death") (quotations omitted); *Southern Pac. Co. v. Barnes,* 3 Ariz.App. 483, 494, 415 P.2d 579, 590 (1966) (noting decedent daughter's "fine relationship" with her family as factor in determining wrongful-death damages). And under State Farm's proposed construction of the statute, § 20–259.03 would bar payment of wrongful-death benefits to any non-custodial former spouse regardless of how good a parent he or she is.

¶ 16 State Farm also argues our decision in *Bither* compels judgment in its favor. In that case, a mother sought wrongful-death uninsured motorist ("UM") benefits after her daughter died in a car accident. *Bither,* 226 Ariz. at 199, ¶ 3, 245 P.3d at 884. The daughter was a passenger in a car driven by her friend, whose parents had purchased a

policy with UM coverage. *Id.* at ¶ 2. As an occupant of the car, the daughter was an "insured" within the meaning of the policy. *Id.* at 200, ¶ 6, 245 P.3d at 885. As here, the insurer argued § 20–259.03 precluded payment of benefits to the mother for the wrongful death of her daughter. We agreed, noting that "[t]he clear legislative mandate of A.R.S. § 20–259.03 is to preclude recovery of UM benefits by a statutory beneficiary who is not also an insured under the policy." *Id.* at ¶ 11. The mother could not recover UM benefits because even though she had a statutory wrongful-death claim pursuant to A.R.S. § 12–612, she was not "a surviving insured" within the meaning of the policy. *Id.* at 201, ¶ 11, 245 P.3d at 886.

¶ 17 Importantly, however, by contrast to White in this case, the mother in *Bither* did not claim to be an "insured" within the meaning of the policy. *Id.* at 200, ¶ 6, 245 P.3d at 885. We do not agree with State Farm that *Bither* held that § 20–259.03 bars a claimant who is not a named insured or a spouse of a named insured from recovering UM or UIM benefits on a wrongful-death claim. To the contrary, *Bither* applied the statute's plain language, which allows payment of benefits to a claimant who is a "surviving insured" under the meaning of the policy. *Id.* at 200–01, ¶ 11, 245 P.3d at 885–86. Because the mother in *Bither* did not claim to be an "insured," the court had no reason to decide whether she might come within the policy's definition of that term.

¶ 18 State Farm also argues its interpretation of A.R.S. § 20–259.03 accords with the statute's language, which allows benefits to be paid to a "surviving insured under the same coverages." State Farm reasons the legislature's use of the plural noun "coverages" means that UIM benefits may be paid only to a claimant who is an "insured" for purposes of each of the coverages typically included in a comprehensive automobile insurance policy, including property damage, medical, collision and rental. Because all relatives who live with a named insured generally are insured to the same extent as the named insured for all such coverages, State Farm argues A.R.S. § 20–259.03 must refer only to those individuals.

¶ 19 State Farm offers no authority for its interpretation, however, and a com-

monsense reading of the statute compels a different conclusion. We do not "consider words in isolation when interpreting statutes." *Estate of Braden ex rel. Gabaldon v. State*, 228 Ariz. 323, 326, ¶ 12, 266 P.3d 349, 352 (2011). The first sentence of A.R.S. § 20–259.03 refers to "uninsured and underinsured motorist coverages of a motor vehicle liability policy." Because the legislature used "coverages" in the first sentence of the statute to refer only to uninsured and underinsured motorist coverages, we cannot accept the proposition that it used the same word in the second sentence to refer to all types of coverages in an insurance policy. *Id.*

¶ 20 More broadly, we reject State Farm's argument that by enacting § 20–259.03, the legislature intended to forbid an insurer from choosing to provide UIM benefits to claimants other than a named insured and resident family members. It is one thing to require an insurer to provide certain coverage. The legislature did just that when it enacted the Uninsured Motorist Act, which requires insurers to "make available" to policyholders uninsured motorist and UIM coverage "which extends to and covers all persons insured under the policy." A.R.S. § 20–259.01(A), (B) (West 2012); *see Bither*, 226 Ariz. at 200, ¶ 9, 245 P.3d at 885 (describing legislative history; citing authorities). It is quite another thing to suppose that in imposing such a requirement, the legislature intended to restrict the freedom of an insurer to choose to define broadly who is an "insured" eligible to receive such benefits.

¶ 21 We take guidance from *Employers Mutual Casualty Co. v. McKeon*, 159 Ariz. 111, 115, 765 P.2d 513, 517 (1988). At issue in that case was whether the plaintiff was entitled only to the uninsured minimum coverage of $15,000 under then-existing A.R.S. § 20–259.01(B) (1986) or the $280,000 policy limit the plaintiff's parents had purchased. *McKeon*, 159 Ariz. at 113, 765 P.2d at 515. Our supreme court rejected the insurer's argument that the plaintiff was entitled only to the statutory minimum:

> Arizona requires that insurance companies offer uninsured motorist coverage *at least* equal to the liability limits of the policy for all persons insured under the policy.... [The] insured's statutory entitlement to

[UIM] coverage is not limited to the ... floor provided by A.R.S. § 20–259.01(A), but also extends to that amount of coverage ... that the named insured has actually elected to purchase pursuant to A.R.S. § 20–259.01(B).

*Id.* at 115, 765 P.2d at 517 (quotation omitted). Thus, *McKeon* held that A.R.S. § 20–259.01's purpose is to provide a minimum level of underinsured coverage rather than a maximum. By the same reasoning, we will not construe A.R.S. § 20–259.03 to preclude an insurer from providing UIM coverage to individuals other than and in addition to the named insureds.

## CONCLUSION

¶ 22 We reverse the judgment in favor of State Farm and order that judgment be entered in favor of White. Contingent on compliance with Arizona Rule of Civil Appellate Procedure 21, White may recover her costs of appeal.

CONCURRING: PATRICIA K. NORRIS, Presiding Judge and JON W. THOMPSON, Judge.